IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tammy Kennedy,<br><br>*On behalf of herself and those<br>similarly situated,*<br>          Plaintiff,<br>v.<br><br>Lady Jane's Haircuts for Men Holding<br>Company, LLC; Lady Jane's Milford, OH,<br>LLC; Lady Jane's Clearwater FL, LLC; Chad<br>Johnson; Tim McCollum; Jesse Dhillon;<br>Alicia Bunch; John Doe 1–10; and Doe<br>Corporation 1-10,<br><br>          Defendants. | Case No.<br><br>Judge<br>Magistrate Judge |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Lady Jane's misclassifies its stylists as "independent contractors' despite the circumstances of the stylists' work establishing that they are actually "employees" under state and federal wage laws.

2.     Tammy Kennedy, on behalf of herself and all similarly-situated individuals, brings this action under 29 U.S.C. § 216(b) and Ohio and Florida state law against Lady Jane's Haircuts for Men Holding Company, LLC; Lady Jane's Milford, OH, LLC; Lady Jane's Clearwater Fl, LLC; Chad Johnson; Tim McCollum; Jesse Dhillon; Alicia Bunch; John Doe 1–10; and Doe Corporations 1-10, (collectively "Defendants"). This action seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Tammy

Kennedy and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and damages under the theory of unjust enrichment.

3. Defendants operate Lady Jane's, a men's only hair salon that operates over 100 stores throughout the United States.

4. Plaintiff seeks to represent the hairstylists who work for Lady Jane's in the state of Ohio ("stylists" or "Lady Jane's stylists").

5. Defendants repeatedly and willfully violated the FLSA, Section 34a of the Ohio Constitution, the OMFWSA, and Ohio's Prompt Pay Act by failing to pay the stylists the legally mandated minimum wage and overtime for all hours worked.

6. All of the Lady Jane's stylists have been subject to the same or similar employment policies and practices.

7. This action also seeks appropriate monetary, declaratory, and equitable relief on behalf of Tammy Kennedy individually based on Defendants willful failure to compensate Tammy Kennedy with minimum and overtime wages as required by Florida Constitution, Art. X, § 24, and damages under the theory of unjust enrichment.

8. This action also seeks appropriate monetary, declaratory, and equitable relief on behalf of Tammy Kennedy arising from Defendants' unlawful retaliation against her for exercising her rights under the Fair Labor Standards Act and Article II, Section 34a of the Ohio Constitution.

2

## Jurisdiction and Venue

9.     This Court has jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

10.     This Court has supplemental jurisdiction over Plaintiff's Ohio and Florida state law claims under 28 U.S.C. § 1367.

11.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Tammy Kennedy**

12.     Plaintiff Tammy Kennedy resides in Loveland, Ohio.

13.     At all times relevant herein, Plaintiff was an "employee" of Defendants as defined in the FLSA, the OMFWSA, Section 34a of the Ohio Constitution, and the Ohio Prompt Pay Act.

14.     Tammy Kennedy has given written consent to join this action, a copy of which is attached to this Class and Collective Action Complaint.

**Defendants**

15.     Defendants' salons are owned and operated by a number of entities and individuals, each of whom employ Tammy Kennedy and the Lady Jane's stylists.

16.     The Defendants misclassified Tammy Kennedy and the Lady Jane's stylists as "independent contractors."

17.     Tammy Kennedy and the Lady Jane's stylists were and are employees of Defendants under the FLSA and Ohio law.

3

18.     Each of the Defendants had control over Tammy Kennedy and the similarly situated Lady Jane's stylists' working conditions.

19.     At all relevant times, Defendants have shared or co-determined those matters governing the essential terms and conditions of employment for Tammy Kennedy and the similarly situated Lady Jane's stylists at Defendants' salons.

20.     At all relevant times, Defendants have had direct or indirect control over the terms and conditions of Tammy Kennedy's work and the work of similarly situated Lady Jane's stylists.

21.     At all relevant times, Defendants possessed the authority to control the terms and conditions of Tammy Kennedy's employment and the employment of the similarly situated Lady Jane's stylists, and Defendants have exercised that authority.

22.     Defendants suffered or permitted Tammy Kennedy and the Lady Jane's stylists to work.

**Lady Jane's Haircuts for Men Holding Company, LLC**

23.     Defendant Lady Jane's Haircuts for Men Holding Company, LLC, is a foreign limited liability company registered to do business in the State of Ohio.

24.     Lady Jane's Haircuts for Men Holding Company, LLC is headquartered at 3921 Rochester Rd., Troy MI 48083, and its registered agent is Defendant Chad Johnson.

25.     Lady Jane's Haircuts for Men Holding Company, LLC was founded by and is owned and/or operated by Defendant Chad Johnson.

26.     Upon information and belief, Lady Jane's Haircuts for Men Holding Company, LLC is the parent company that owns the individual entities that own and operate each Lady Jane's salon location.

4

27.     Lady Jane's Haircuts for Men Holding Company, LLC controls the individual entities that own and operate all Lady Jane's salons.

28.     Lady Jane's Haircuts for Men Holding Company, LLC, and the individual entities it owns, make up the Lady Jane's Haircuts for Men operation.

29.     Lady Jane's Haircuts for Men Holding Company, LLC, and the entities it owns, form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate the Lady Jane's salons and maintain interrelated operations, centralized control of labor relations, common management and common ownership and financial control.

30.     Because the work performed by Tammy Kennedy and all other Lady Jane's stylists benefited Lady Jane's Haircuts for Men Holding Company, LLC and directly or indirectly furthered its joint interests, Lady Jane's Haircuts for Men Holding Company, LLC is a joint employer of Tammy Kennedy and the similarly situated Lady Jane's stylists under the FLSA's definition of "employer."

31.     Lady Jane's Haircuts for Men Holding Company, LLC oversees the operations at all Lady Jane's salons.

32.     Lady Jane's Haircuts for Men Holding Company, LLC has substantial control over Tammy Kennedy and the similarly situated Lady Jane's stylists' work, their working conditions, and over the unlawful policies and practices alleged herein.

33.     Lady Jane's Haircuts for Men Holding Company, LLC directly or indirectly controls/controlled the terms and conditions of Tammy Kennedy's work and the work of similarly situated Lady Jane's stylists.

34.    Lady Jane's Haircuts for Men Holding Company, LLC maintained control, oversight, and direction over Tammy Kennedy and the similarly situated Lady Jane's stylists, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

35.    Upon information and belief, Lady Jane's Haircuts for Men Holding Company, LLC applied or caused to be applied substantially the same employment policies, practices, and procedures to all Lady Jane's stylists, including policies, practices and procedures relating to payment of minimum wages, overtime wages, scheduling, and timekeeping.

36.    Lady Jane's Haircuts for Men Holding Company, LLC  is an "employer" of Tammy Kennedy and the Lady Jane's stylists as that term is defined by the FLSA, the OMFWSA, Section 34a, the Ohio Prompt Pay Act, and the Florida Constitution.

37.    Lady Jane's Haircuts for Men Holding Company, LLC  is an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

38.    Lady Jane's Haircuts for Men Holding Company, LLC has gross revenue that exceeds $500,000 per year.

**Lady Jane's Milford, OH, LLC**

39.    Defendant Lady Jane's Milford, OH, LLC, is a foreign limited liability company registered to do business in the State of Ohio.

40.    Lady Jane's Milford, OH, LLC is headquartered at 3921 Rochester Rd., Troy MI 48083, and its registered agent is Defendant Chad Johnson.

6

41.     Lady Jane's Milford, OH, LLC was founded by and is owned and/or operated by Defendant Chad Johnson either individually or through his ownership of Lady Jane's Haircuts for Men Holding Company, LLC.

42.     Lady Jane's Milford, OH, LLC is the entity that appears on Plaintiff Tammy Kennedy's 1099s.

43.     Lady Jane's Milford, OH, LLC has substantial control over Tammy Kennedy and the similarly situated Lady Jane's stylists' work, their working conditions, and over the unlawful policies and practices alleged herein.

44.     Lady Jane's Milford, OH, LLC directly or indirectly controls/controlled the terms and conditions of Tammy Kennedy's work and the work of similarly situated Lady Jane's stylists.

45.     Lady Jane's Milford, OH, LLC maintained control, oversight, and direction over Tammy Kennedy and the similarly situated Lady Jane's stylists, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

46.     Upon information and belief, Lady Jane's Milford, OH, LLC applied or caused to be applied substantially the same employment policies, practices, and procedures to all Lady Jane's stylists, including policies, practices and procedures relating to payment of minimum wages, overtime wages, scheduling, and timekeeping.

47.     Lady Jane's Milford, OH, LLC is an "employer" of Tammy Kennedy and the Lady Jane's stylists as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

48. Lady Jane's Milford, OH, LLC is an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

49. Lady Jane's Milford, OH, LLC has gross revenue that exceeds $500,000 per year.

**Lady Jane's Clearwater FL, LLC**

50. Defendant Lady Jane's Clearwater FL, LLC, is a foreign limited liability company registered to do business in the State of Florida.

51. Lady Jane's Clearwater FL, LLC is headquartered at 34915 Woodward Ave., Birmingham MI 48009, and its registered agent is Defendant Chad Johnson.

52. Lady Jane's Clearwater FL, LLC was founded by and is owned and/or operated by Defendant Chad Johnson either individually or through his ownership of Lady Jane's Haircuts for Men Holding Company, LLC.

53. Lady Jane's Clearwater FL, LLC is the entity that appears on Plaintiff Tammy Kennedy's 1099s.

54. Lady Jane's Clearwater FL, LLC has substantial control over Tammy Kennedy's work, their working conditions, and over the unlawful policies and practices alleged herein.

55. Lady Jane's Clearwater FL, LLC directly or indirectly controls/controlled the terms and conditions of Tammy Kennedy's work.

56. Lady Jane's Clearwater FL, LLC maintained control, oversight, and direction over Tammy Kennedy, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

57. Lady Jane's Clearwater FL, LLC is an "employer" of Tammy Kennedy as that term is defined by the FLSA, and the Florida Constitution.

8

58.     Lady Jane's Clearwater FL, LLC is an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

59.     Lady Jane's Clearwater FL, LLC has gross revenue that exceeds $500,000 per year.

**Chad Johnson**

60.     Chad Johnson is the founder and owner of Defendant Lady Jane's Haircuts for Men Holding Company, LLC, Defendant Lady Jane's Milford, OH, LLC, and Defendant Lady Jane's Clearwater FL, LLC (together, "Entity Defendants").

61.     Chad Johnson is involved in the operation of the Entity Defendants.

62.     Chad Johnson is the registered agent of the Entity Defendants.

63.     Upon information and belief, Chad Johnson is the CEO of the Entity Defendants.

64.     Through the Entity Defendants, Chad Johnson owned and operated Lady Jane's Haircuts for Men.

65.     Chad Johnson supervised and directed the employment of Tammy Kennedy and the Lady Jane's stylists.

66.     Chad Johnson is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, the OMFWSA, the Ohio Prompt Pay Act, and the Florida Constitution because he owns and operates the Entity Defendants, serves as a member of the Entity Defendants, ultimately controls significant aspects of the Entity Defendants' day-to-day functions, and ultimately controls compensation of the Lady Jane's stylists. 29 U.S.C. § 203(d).

67.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had financial control over the operations at each of the Entity Defendants.

9

68.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has a role in significant aspects of the Entity Defendants' day-to-day operations.

69.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had control over the Entity Defendants' pay policies.

70.     At all relevant times, by virtue of his role as owner and/or CEO of Entity Defendants, Chad Johnson has had power over personnel and payroll decisions at the Entity Defendants.

71.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had the power to hire, fire and discipline employees, including Tammy Kennedy and the Lady Jane's stylists.

72.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had the power to stop any illegal pay practices that harmed Tammy Kennedy and the Lady Jane's stylists.

73.     At all times relevant, by virtue of his role as owner and/or CEO of Entity Defendants, Chad Johnson has had the power to transfer the assets and liabilities of the Entity Defendants.

74.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had the power to declare bankruptcy on behalf of the Entity Defendants.

75.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had the power to enter into contracts on behalf of the Entity Defendants.

76.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson has had the power to close, shut down, and/or sell the Entity Defendants.

77.     At all relevant times, by virtue of his role as owner and/or CEO of the Entity Defendants, Chad Johnson had authority over the overall direction of the Entity Defendants and was ultimately responsible for their operations.

78.     The Entity Defendants function for Chad Johnson's profit.

79.     Chad Johnson has influence over how the Entity Defendants can run more profitably and efficiently.

**Tim McCollum**

80.     Tim McCollum is the President of the Entity Defendants.

81.     Tim McCollum is involved in the operation of the Entity Defendants.

82.     Through the Entity Defendants, Tim McCollum owned and operated Lady Jane's Haircuts for Men.

83.     Tim McCollum supervised and directed the employment of Tammy Kennedy and the Lady Jane's stylists.

84.     Tim McCollum is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, the OMFWSA, the Ohio Prompt Pay Act, and the Florida Constitution because he owns and operates the Entity Defendants, serves as a member of the Entity Defendants,

11

ultimately controls significant aspects of the Entity Defendants' day-to-day functions, and ultimately controls compensation of the Lady Jane's stylists. 29 U.S.C. § 203(d).

85.     At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has had financial control over the operations at each of the Entity Defendants.

86.     At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has a role in significant aspects of the Entity Defendants' day-to-day operations.

87.     At all relevant times, by virtue of his role President of the Entity Defendants, Tim McCollum has had control over the Entity Defendants' pay policies.

88.     At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has had power over personnel and payroll decisions at the Entity Defendants.

89.     At all relevant times, by virtue of his role as President of the Entity Defendants Tim McCollum has had the power to hire, fire and discipline employees, including Tammy Kennedy and the Lady Jane's stylists.

90.     At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has had the power to stop any illegal pay practices that harmed Tammy Kennedy and the Lady Jane's stylists.

91.     At all times relevant, by virtue of his role as President of Entity Defendants, Tim McCollum has had the power to transfer the assets and liabilities of the Entity Defendants' corporate entities.

92.     At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has had the power to declare bankruptcy on behalf of the Entity Defendants.

93.    At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has had the power to enter into contracts on behalf of the Entity Defendants.

94.    At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum has had the power to close, shut down, and/or sell the Entity Defendants.

95.    At all relevant times, by virtue of his role as President of the Entity Defendants, Tim McCollum had authority over the overall direction of the Entity Defendants and was ultimately responsible for their operations.

96.    The Entity Defendants function for Tim McCollum's profit.

97.    Tim McCollum has influence over how the Entity Defendants can run more profitably and efficiently.

**Jesse Dhillon**

98.    Jesse Dhillon is the Vice-President of the Entity Defendants.

99.    Jesse Dhillon is involved in the operation of the Entity Defendants.

100.    Through the Entity Defendants, Jesse Dhillon owned and operated Lady Jane's Haircuts for Men.

101.    Jesse Dhillon supervised and directed the employment of Tammy Kennedy and the Lady Jane's stylists.

102.    Jesse Dhillon is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, the OMFWSA, the Ohio Prompt Pay Act, and the Florida Constitution because he owns and operates the Entity Defendants, serves as a member of the Entity Defendants, ultimately controls significant aspects of the Entity Defendants' day-to-day functions, and ultimately controls compensation of the Lady Jane's stylists. 29 U.S.C. § 203(d).

13

103. At all relevant times, by virtue of his role as Vice-President of the Entity Defendants, Jesse Dhillon has had financial control over the operations at each of the Entity Defendants.

104. At all relevant times, by virtue of his role as Vice-President of the Entity Defendants, Jesse Dhillon has a role in significant aspects of the Entity Defendants' day-to-day operations.

105. At all relevant times, by virtue of his role Vice-President of the Entity Defendants, Jesse Dhillon has had control over the Entity Defendants' pay policies.

106. At all relevant times, by virtue of his role as Vice-President of Entity Defendants, Jesse Dhillon has had power over personnel and payroll decisions at the Entity Defendants.

107. At all relevant times, by virtue of his role as Vice-President of the Entity Defendants Jesse Dhillon has had the power to hire, fire and discipline employees, including Tammy Kennedy and the Lady Jane's stylists.

108. At all relevant times, by virtue of his role as Vice-President of the Entity Defendants, Jesse Dhillon has had the power to stop any illegal pay practices that harmed Tammy Kennedy and the Lady Jane's stylists.

109. At all times relevant, by virtue of his role as Vice-President of the Entity Defendants, Jesse Dhillon has had the power to transfer the assets and liabilities of the Entity Defendants' corporate entities.

110. At all relevant times, by virtue of his role as Vice-President of Entity Defendants, Jesse Dhillon has had the power to declare bankruptcy on behalf of the Entity Defendants.

111. At all relevant times, by virtue of his role as Vice-President of Entity Defendants, Jesse Dhillon has had the power to enter into contracts on behalf of the Entity Defendants.

112. At all relevant times, by virtue of his role as Vice-President of the Entity Defendants, Jesse Dhillon has had the power to close, shut down, and/or sell Entity Defendants.

113. At all relevant times, by virtue of his role as Vice-President of the Entity Defendants, Jesse Dhillon had authority over the overall direction of the Entity Defendants and is ultimately responsible for their operations.

114. The Entity Defendants function for Jesse Dhillon's profit.

115. Jesse Dhillon has influence over how the Entity Defendants can run more profitably and efficiently.

**Alicia Bunch**

116. Alicia Bunch is the Chief Operating Officer ("COO") of the Entity Defendants.

117. Alicia Bunch is involved in the operation of the Entity Defendants.

118. Through the Entity Defendants, Alicia Bunch owned and operated Lady Jane's Haircuts for Men.

119. Alicia Bunch supervised and directed the employment of Tammy Kennedy and the Lady Jane's stylists.

120. Alicia Bunch is individually liable under the definitions of "employer" set forth in the FLSA, Section 34a, the OMFWSA, the Ohio Prompt Pay Act, and the Florida Constitution because she owns and operates the Entity Defendants, serves as a member of the Entity Defendants, ultimately controls significant aspects of the Entity Defendants' day-to-day functions, and ultimately controls compensation of the Lady Jane's stylists. 29 U.S.C. § 203(d).

15

121.    At all relevant times, by virtue of her role as COO of the Defendant Entities, Alicia Bunch has had financial control over the operations at each of the Entity Defendants.

122.    At all relevant times, by virtue of her role as Alicia Bunch of the Entity Defendants, Alicia Bunch has a role in significant aspects of the Entity Defendants' day-to-day operations.

123.    At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had control over the Entity Defendants' pay policies.

124.    At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had power over personnel and payroll decisions at the Entity Defendants.

125.    At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had the power to hire, fire and discipline employees, including Tammy Kennedy and the Lady Jane's stylists.

126.    At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated Lady Jane's stylists.

127.    At all times relevant, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had the power to transfer the assets and liabilities of the Entity Defendants' corporate entities.

128.    At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had the power to declare bankruptcy on behalf of the Entity Defendants.

129.    At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had the power to enter into contracts on behalf of the Entity Defendants.

16

130. At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch has had the power to close, shut down, and/or sell the Entity Defendants.

131. At all relevant times, by virtue of her role as COO of the Entity Defendants, Alicia Bunch had authority over the overall direction of the Entity Defendants and was ultimately responsible for their operations.

132. The Entity Defendants function for Alicia Bunch's profit.

133. Alicia Bunch has influence over how the Entity Defendants can run more profitably and efficiently.

**Doe Corporations 1-10**

134. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies in whole or in part that also qualify as "employers" of Tammy Kennedy and the Lady Jane's stylists as that term is defined by the FLSA and Ohio and Florida wage law.

135. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

136. Upon information and belief, there are additional individuals who also qualify as "employers" of Tammy Kennedy and the Lady Jane's stylists as that term is defined by the FLSA and Ohio and Florida wage law.

137. Upon information and belief, Chad Johnson has entered into co-owner relationships with business partners, and those individuals might also qualify as "employers" of Tammy

17

Kennedy and the Lady Jane's stylists as the term is defined by the FLSA and Ohio and Florida wage law.

138.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

## CLASS WIDE FACTUAL ALLEGATIONS

139.    During all relevant times, Defendants have operated the Defendants' Lady Jane's salons.

140.    Defendants' Lady Jane's salons employ stylists to perform styling and grooming services for men.

141.    Defendants' Lady Jane's salons required Tammy Kennedy and the Lady Jane's stylists to execute "independent contractor agreements."

142.    The terms of the "independent contractor agreements" do not reflect the working conditions, policies or pay practices at the Defendants' Lady Jane's salons.

143.    The Lady Jane's stylists are not independent contractors, but employees.

144.    The Lady Jane's stylists worked for Defendants in a continuous and indefinite relationship.

145.    The Lady Jane's stylists are trained and skilled stylists that are expected to "stay on the cutting edge of the cosmetology industry."

146.    Lady Jane's provides the workspace, advertising, software, phone systems, insurance, marketing, cleaning supplies, and products for the Lady Jane's stylists to perform their work for Defendants.

18

147.    Lady Jane's stylists do not have the opportunity to profit based on their skill because Defendants control the prices they are allowed to charge and services they provide.

148.    Lady Jane's stylists' economic status is inextricably linked to the services they can provide and the prices they can charge, both of which are completely controlled by Defendants.

149.    The Lady Jane's stylists do the work that Defendants make money from—providing hair cutting and other salon services for men.

150.    The stylists are scheduled for regular shifts so that they can provide services to any customers who come to the salon during operating hours.

151.    Defendants utilize a central management team that monitors and controls the operations and finances of each Lady Jane's salon location.

152.    Defendants' customers pay Defendants for the services provided by Lady Jane's stylists, not the stylists themselves.

153.    Defendants Chad Johnson, Tim McCollum, Jess Dhillon, and Alicia Bunch are all part of Lady Jane's central management team.

154.    The Entity Defendants and the central management team review applications of potential Lady Jane's stylists, including the potential stylists' professional experience in the following categories: Salon Experience, Haircut Experience, Clipper Experience, and Men's Hairstyling Experience.

155.    Lady Jane's stylists hold themselves out to customers as representatives of Lady Jane's rather than as independent contractors.

156.    The Entity Defendants and central management team monitor each Lady Jane's location to ensure Lady Jane's stylists follow Lady Jane's company-wide policies and procedures.

19

157.     The Entity Defendants and the central management team monitor the services charged and tips received by the stylists.

158.     Defendants' Lady Jane's salons charge Tammy Kennedy and Lady Jane's stylists for the right to work in the salons. Defendants charge the hair stylists a set percentage of each service (e.g., 60%), which Defendants characterize as "rent."

159.     Defendants require that stylists pay at least $150 per month in "rent" payments. If the stylists do not generate $150 per month in "rent" payments, they are required by Defendants to pay the difference to the company.

160.     Defendants' Lady Jane's salons make money from Tammy Kennedy and the Lady Jane's stylists through service charges; product sales; booth rentals; and other miscellaneous fees.

161.     Once a stylist begins working at one of the Defendants' Lady Jane's salons, the reality of the working relationship between the stylist and Lady Jane's is that of an employer-employee.

162.     The stylists are required to work at times designated by Defendants. If they are not able to make their shift, they need to find coverage from one of the other stylists.

163.     Defendants require Tammy Kennedy and the Lady Jane's stylists to pay a monthly minimum dollar amount as "rent."

164.     Defendants require Tammy Kennedy and the Lady Jane's stylists to pay a percentage of their stylist service sales as "rent."

165.     Defendants require Tammy Kennedy and the Lady Jane's stylists to pay a percentage of their product sales as "rent."

166.     Defendants require Tammy Kennedy and the Lady Jane's stylists to pay a nominal amount every day into a "product fund."

167.     Contrary to the terms of Defendants' independent contractor agreements Tammy Kennedy and the Lady Jane's stylists do not have control over the method, manner, and means of performing their services.

168.     Defendants require the Tammy Kennedy and the Lady Jane's stylists to charge the prices set by Defendants for the services the Lady Jane's stylists perform for the customers.

169.     The price charged to clients for each service is based on Defendants' menu of services.

170.     Defendants control the services Tammy Kennedy and the Lady Jane's stylists may provide and the price of those services by listing the services and prices on the shop wall for customers to see.

171.     The same menu of services is offered at each of Defendants' Lady Jane's locations nationwide.

172.     Defendants' Lady Jane's salons require Tammy Kennedy and the Lady Jane's stylists to follow Defendants' customer services expectations.

173.     Defendants' Lady Jane's salons do not pay Tammy Kennedy and the Lady Jane's stylists a direct wage.

174.     Tammy Kennedy and the Lady Jane's stylists receive a percentage of the final service charge clients pay.

175.     Defendants deduct shop charges and applicable promotional discounts from the total service charge clients pay to establish the final service charge.

21

176.     Tammy Kennedy and the Lady Jane's stylists were not paid directly by the clients whom they provided services to, but were instead paid by Defendants after they had taken "rent" from their service charges.

177.     Defendants charge Tammy Kennedy and the Lady Jane's stylists 60% of the money the stylists earn for the services performed and 86% for the products sold as the stylists' "rent."

178.     In reality, Defendants are using a piece rate payment system to compensate Tammy Kennedy and the Lady Jane's stylists.

179.     Defendants also charge Tammy Kennedy and the Lady Jane's stylists 3% of each credit card payment the Lady Jane's stylist accepts.

180.     Contrary to the terms of Defendants' independent contractor agreements Lady Jane's stylists do not have control over their own schedules.

181.     Defendants require Tammy Kennedy and Lady Jane's stylists to work ten-hour shifts.

182.     The Performance Agreement requires Lady Jane's stylists to agree to arrive to work 15 minutes before their scheduled start time.

183.     The Performance Agreement requires Lady Jane's stylists to agree to follow salon policies on call-outs and shift coverage.

184.     If a Lady Jane's stylist is late for a shift, she will receive a verbal warning from Defendants.

185.     If a Lady Jane's stylist is late for a second shift, she will be sent home or lose a day on an upcoming schedule.

186.     If a Lady Jane's stylist needs or wants to work less than 10 hours a day, she is responsible for getting coverage for the remainder of the 10-hour shift.

187.     Defendants require Lady Jane's stylists to work 3 or 4 days each week.

188.     Defendants require Tammy Kennedy and the Lady Jane's stylists to provide a report of the reason the stylist is leaving a shift early.

189.     Defendants monitor the scheduling of the Lady Jane's stylists at each location.

190.     Defendants require the Lady Jane's stylists to submit requests for days off.

191.     The central management team sets the schedules of Tammy Kennedy and the Lady Jane's stylists.

192.     Lady Jane's stylists are not permitted to leave the salon on their scheduled shifts even if they do not have any customers to service.

193.     Lady Jane's stylists are not free to offer unique services or unique customer experiences, such as offering candy, that the company does not approve.

194.     Defendants utilize a customized point-of-sale (POS) system.

195.     Defendants require all Lady Jane's stylists to clock in ("activate") and clock out ("deactivate") on the POS system.

196.     Defendants require all Lady Jane's stylists to submit a copy of their driver's license, cosmetology or barber's license, email address, and photo before the stylist can create a profile on the POS system.

197.     Defendants require Tammy Kennedy and the Lady Jane's stylists to enter all clients and services into the POS system.

23

198. Defendants require stylists with less than 2 years of experience to go through the Lady Jane's training program.

199. Lady Jane's stylists are expected to sell Defendants' Lady Jane's grooming products.

200. Defendants set and control the prices of the Lady Jane's grooming products and the prices at which the products must be sold.

201. Defendants preclude Tammy Kennedy and the Lady Jane's stylists from selling or using any grooming products other than those provided by Defendants.

202. Defendants require Tammy Kennedy and the Lady Jane's stylists to perform daily cleaning duties at the salons.

203. Defendants require Tammy Kennedy and the Lady Jane's stylists to check their voicemails and text messages daily.

204. Defendants require Tammy Kennedy and the Lady Jane's stylists to submit maintenance reports to the central management team.

205. Defendants require Tammy Kennedy and the Lady Jane's stylists to conduct monthly retail product inventory counts.

206. Defendants require Tammy Kennedy and the Lady Jane's stylists to wash, dry, and restock towels.

207. Defendants require Tammy Kennedy and the Lady Jane's stylists to perform product counts, and report money generated from product sales each day.

208. Defendants require Tammy Kennedy and the Lady Jane's stylists to restock display shelves.

24

209.     Defendants require Tammy Kennedy and the Lady Jane's stylists to restock and replenish styling products.

210.     Defendants require Tammy Kennedy and the Lady Jane's stylists to answer phones during their shifts and perform various manual labor assignments.

211.     Defendants require Tammy Kennedy and the Lady Jane's stylists to sweep, and perform other various cleaning tasks, take out the trash, count and place the petty cash in the store safe, and lock the salon doors as part of the required "Closing procedures."

212.     Defendants establish weekly and monthly benchmarks that Tammy Kennedy and the Lady Jane's stylists are expected to achieve.

213.     Defendants designate certain Lady Jane's stylists as "Key Holders."

214.     Beyond the requirements that applied to all Lady Jane's stylists, Defendants required the Key Holders to arrive 30-45 minutes before the salon opened to the public to perform procedures to prepare the salon for opening, including: unlocking the door; turning on the towel warmers, wax pot, shaving cream dispensers, computers, and televisions; open the petty cash tracker; count and report petty cash; manage the other stylists, including making sure each stylist "activated" or logged-in to the POS system; and other tasks to prepare the salon for customers.

215.     Key Holders are not paid a direct wage for performing these additional responsibilities, instead Defendants take 1% less of their service fee than Defendants take from the other Lady Jane's stylists.

216.     Defendants have standardized rent agreements for their Lady Jane's stylists.

217.     Defendants have and use standardized rate increases for their stylists based on job duties and job tenure.

25

218. Tammy Kennedy and the Lady Jane's stylists perform services integral to Lady Jane's primary business.

219. Defendants do not pay time-and-a-half overtime for hours worked in excess of 40 hours per week.

220. Defendants do not pay the stylists minimum wage for the hours they work in some or all workweeks.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

221. Tammy Kennedy worked for Defendants as a Lay Jane's stylist at the Lady Jane's Clearwater, FL location from January 2017-May 2020.

222. Lady Jane's Clearwater FL, LLC, 34915 Woodward Ave., Birmingham, MI 48009 is the Defendant entity that owned the Clearwater, Florida Lady Jane's salon where Tammy Kennedy worked.

223. In June 2020, Tammy Kennedy transferred to the Milford, OH Lady Jane's location, and worked there as a Lady Jane's stylist until February 2023.

224. Tammy Kennedy worked pursuant to an "independent contractor" agreement.

225. Tammy Kennedy had no ability to negotiate her agreement. The terms were set by Defendants and offered to Tammy Kennedy on a take it or leave it basis.

226. Tammy Kennedy was required to perform work according to the specific requirements and instructions provided by Defendants.

227. Tammy Kennedy received a percentage of each service she performed.

228. Tammy Kennedy had to work designated shifts and was not free to set her own schedule.

229.    Tammy Kennedy was not allowed to set or alter the prices that applied to the services she provided.

230.    The costs of services Tammy Kennedy provided were paid to Lady Jane's, then Lady Jane's paid Tammy Kennedy according to a set percentage set by Lady Jane's.

231.    Tammy Kennedy was not permitted to leave when she did not have any customers. She had to be present and available to service any customers who walked in.

232.    Tammy Kennedy had to complete a number of non-stylists job duties to keep the location functioning and organized.

233.    When Tammy Kennedy attempted to deviate from the rules set by Defendants, she was disciplined or admonished.

234.    During her employment at Defendants' Milford, OH Lady Jane's location, Tammy Kennedy performed the role of Key Holder for approximately 3 months.

235.    Tammy Kennedy signed several separate Independent Contractor Agreements with Defendants during the tenure of her employment from 2017-2023.

236.    Defendants charged Tammy Kennedy for the right to work in the Lady Jane's salons.

237.    Defendants charged Tammy Kennedy "rent" of her booth rental at the Lady Jane's salons where she worked.

238.    During the tenure of her employment with Defendants the "rent" ranged from 52-60% of the daily revenue she collected for performing her services if the customers paid in cash.

239.    The daily revenue was calculated from the total of the final service charges Tammy Kennedy's clients paid for her services.

240. Defendants deducted shop charges, and any additional promotional discounts set by the Defendants from the total service charge to establish the final service charge.

241. During the tenure of her employment with Defendants the "rent" ranged from 55-63% of the daily revenue she collected for performing her services if the customers paid with a credit card.

242. During the tenure of her employment with Defendants, Tammy Kennedy was required to push the sales of Defendants' grooming products.

243. Tammy Kennedy was not paid directly by the clients whom she provided services to, but was instead paid by Defendants after they had taken "rent" from her services.

244. In addition to the "rent" collected from the stylist services Tammy Kennedy performed, Defendants required Tammy Kennedy to pay them 86%-89% of the price of all grooming products sold.

245. Tammy Kennedy was required to use the Defendants' styling and cleaning products (hair gel, shampoo, conditioner, hair dye, etc.).

246. Tammy Kennedy was also required to pay an additional nominal daily "product fee" that counted as "rent" to Defendants for use of the Defendants' styling and cleaning products.

247. Despite the Independent Contractor Agreement stating that Tammy Kennedy could make her own schedule, she was not permitted to work the 5 8-hour days schedule she requested but was instead required to work shifts in increments of 10 hours, except on Sundays, where the required shift was 7 hours.

248.     Tammy Kennedy did not work for any other salon or provide stylist services to any other business or individual outside of the work she performed for Defendants.

249.     Generally, Tammy Kennedy worked 5 shifts per week.

250.     Tammy Kennedy regularly worked in excess of 40 hours per week as a Lady Jane's stylist.

251.     Tammy Kennedy regularly worked in excess of 40 hours per week when she was the Key Holder.

252.     Defendant Alicia Bunch regularly sent text messages and called Tammy Kennedy to discuss her schedule and other Lady Jane's employment issues when Tammy Kennedy was not scheduled or at work.

253.     When Tammy Kennedy needed to take a sick day, she was required to contact the central management team to request permission.

254.     When Tammy Kennedy needed to take a sick day or a personal day, she was responsible for contacting other Lady Jane's stylists to arrange to have her shift covered.

255.     When Tammy Kennedy wanted to take a vacation day, she had to submit a request to the central management team for approval.

256.     Defendants required Tammy Kennedy to arrive between 15-30 minutes before her scheduled shifts.

257.     During this pre-shift time as a Lady Jane's stylist, Tammy Kennedy would perform the duties Defendants required her and the other Lady Jane's stylists to perform, including ensuring that her workstation and the rest of the salon was clean, stocked, and ready to serve clients.

29

258.     During this pre-shift time as a Key Holder, Tammy Kennedy would unlock the building, roll towels, stock shelves, turn on televisions, and perform other duties to prepare the salon for opening.

259.     At the start of her shift time, Tammy Kennedy would log-in ("activate") to the POS system.

260.     Tammy Kennedy would log-out of the POS system if she left the building for lunch breaks.

261.     If Tammy Kennedy did not leave the building for lunch, she would remain logged-in to the POS system and be ready to assist a customer if he arrived during her lunch break. This resulted in Tammy Kennedy often not taking any meal break.

262.     Tammy Kennedy was regularly contacted on her days off to address staffing or other operational issues via email and text.

263.     Tammy Kennedy would regularly stay beyond the scheduled end of her 10-hour shift to complete her closing duties.

264.     As a Lady Jane's stylist, Tammy Kennedy's closing duties included sweeping and cleaning her workstation, sweeping, and performing general cleaning duties in the salon, starting the laundry, taking out the trash, perform product counts, report money generated from that day's sales, restocking the grooming and styling products used by all Lady Jane's stylists, and other various manual labor assignments.

265.     Tammy Kennedy did not receive any compensation from Defendants for completing her required opening and closing duties.

266.     During her scheduled shift, when Tammy Kennedy was not performing stylist services for a client, she was expected to answer the phones and assist with customer service issues.

267.     Tammy Kennedy did not receive any compensation from Defendants for completing these required customer service duties.

268.     Despite the Independent Contractor Agreement stating that Tammy Kennedy could control over the method, manner, and means of performing her services, Defendants required Tammy Kennedy to perform and charge the prices set for those services by Defendants.

269.     Defendants maintain large signs in each of their salons that list the services provided and the charge for each service:



270.     Tammy Kennedy attempted to charge a higher price for a precision haircut than the $22 price that was listed on the sign, and her customer refused to pay.

271.     Tammy Kennedy requested the central management team add additional language to the sign that would indicate that $22 for a precision haircut was just a "minimum price" so she could actually charge her customers her own set price, but the central management team refused.

272.     In February 2022, Tammy Kennedy was reprimanded by the central management team for spending too much time with her clients.

273.     In April 2022, the central management team began removing some of Tammy Kennedy's typical 5 day-a-week shifts as a retaliatory action as a result of Tammy Kennedy standing up to the central management team about how she and the other stylists were treated like employees rather than independent contractors.

274.     In August 2022, Tammy Kennedy contacted an attorney regarding her employment situation with Defendants.

275.     Once Defendants became aware that Tammy Kennedy had contacted an attorney, Defendants reduced her scheduled days to work and emailed her frequently, sometimes using harassing language.

276.     Tammy Kennedy was not paid a minimum wage as required by the FLSA and Ohio and Florida law.

277.     For example, in June 2021, the Federal Minimum wage was $7.25. If Tammy Kennedy worked her typical 50 hours per week for the 4 weeks of that month, she should have made $1,595. However, Tammy Kennedy only made $1,037.63. Defendants failed to ensure that Tammy Kennedy was paid at least the federal minimum wage for her hours worked.

278.     In June 2021, the Ohio state minimum wage was $8.80. If Tammy Kennedy worked her typical 50 hours per week for the 4 weeks of that month, she should have made $1,936.00.

32

Instead, Tammy Kennedy only made $1,037.63. Defendants failed to ensure that Tammy Kennedy was paid at least the Ohio minimum wage for her hours worked.

279.    In May 2023, Defendants retaliatory actions culminated in termination of Tammy Kennedy's contract.

280.    Defendants control over Tammy Kennedy's role as a stylist and key holder resulted in an employee-employer relationship as opposed to the independent contractor relationship Defendants seek to hide behind.

## COLLECTIVE ACTION ALLEGATIONS

281.    Plaintiff Tammy Kennedy hereby incorporates by reference each of the foregoing allegations.

282.    At all times material to this action, Defendants were "employers" of Tammy Kennedy and the Lady Jane's stylists as defined by §203(d) of the FLSA.

283.    At all times material to this action Tammy Kennedy and the Lady Jane's stylists were "employees" of Defendants as defined by §203(e) of the FLSA.

284.    Defendants misclassified Tammy Kennedy and the Lady Jane's stylists as "independent contractors."

285.    Tammy Kennedy brings the First and Second Counts under 29 U.S.C. 216(b) on behalf of herself and a collective consisting of:

> All former stylists employed by Defendants in the State of Ohio between the date three years prior to the filing of this Complaint, and the date of final judgment in this matter who elect to opt-in to this action (the "FLSA Collective").

286.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been

subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully failing to pay the wages of Tammy Kennedy and the FLSA Collective and refusing to pay Tammy Kennedy and the FLSA Collective minimum wage for all hours worked. Tammy Kennedy's claims are essentially the same as those of the FLSA Collective.

287.    Defendants failed to pay Tammy Kennedy and the FLSA Collective a direct wage, which resulted in a violation of the FLSA minimum wage provision.

288.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

289.    Defendants failed to pay Tammy Kennedy and the FLSA Collective at least the federal minimum wage for all hours worked.

290.    Defendants failed to pay Tammy Kennedy and the FLSA Collective at least "time-and-a-half" the federal mandated minimum for hours worked in excess of forty hours per week.

291.    Defendants failed to record all hours Tammy Kennedy and the FLSA Collective worked in and for the salon, which resulted in a violation of the FLSA's record keeping requirements.

292.    The FLSA Collective members are readily identifiable and ascertainable.

293.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names, addresses, email addresses, and phone numbers are readily available from Defendants' records.

294.    In recognition of the services Tammy Kennedy has rendered and will continue to render to the FLSA Collective, she will request payment of a service award upon resolution of this action.

## **CLASS ACTION ALLEGATIONS**

295.    Plaintiff Tammy Kennedy brings the Third, Fourth, Fifth, Sixth, and Seventh

Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons

consisting of:

> All Lady Jane's stylists employed by Defendants at Defendants' Lady Jane's salons
> in the state of Ohio between the date six years prior to the filing of the original
> Complaint, and the date of final judgment in this matter ("Rule 23 Class").

296.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and

any member of the Judges' immediate family; and all persons who will submit timely and otherwise

proper requests for exclusion from the Rule 23 Class.

297.    The number and identity of the Rule 23 Class members are ascertainable from

Defendants' records.

298.    The hours assigned and worked, the positions held, and the rates of pay for each

Rule 23 Class Member are also determinable from Defendants' records.

299.    For the purpose of notice and other purposes related to this action, their names,

addresses, email addresses, and phone numbers are readily available from Defendants.

300.    Notice can be provided by means permissible under Federal Rule of Civil Procedure

23 for the Rule 23 Class members.

301.    The Rule 23 Class is so numerous that joinder of all members is impracticable, and

the disposition of their claims as a class will benefit the parties and the Court.

302.    There are more than 50 Rule 23 Class members.

303.     The disposition of the Rule 23 Class members' claims as a class will benefit the parties and the Court.

304.     Tammy Kennedy's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

305.     Tammy Kennedy and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime wages, and being unjust enriched through their relationship with the stylists.

306.     Tammy Kennedy and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with OMFWSA, Section 34a, O.R.C. § 4113.15, and the doctrine of unjust enrichment.

307.     Plaintiff seeks equitable tolling of the claims asserted on behalf of Plaintiff and the Rule 23 Class members such that they are permitted to recover their unpaid wages and damages for a period of six years in light of the fact that Defendants have consistently misrepresented the legal requirements and standards, both in their independent contractor agreements and through their behaviors and other communications, that apply to the working relationship between Defendants and the Rule 23 Class members.

308.     Tammy Kennedy and the Rule 23 Ohio Class members have all been injured in that they have been uncompensated to Defendants' common policies, practices, and patterns of conduct. Defendants' policies and practices affected all Rule 23 Ohio Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

36

309.     Tammy Kennedy and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

310.     By seeking to represent the interests of the Rule 23 Class members, Tammy Kennedy is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

311.     Tammy Kennedy is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

312.     Tammy Kennedy is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

313.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these

costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

314.    Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

315.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

316.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Tammy Kennedy and the Rule 23 Class members individually and include, but are not limited to:

    a.    Whether Defendants misclassified Tammy Kennedy and the Rule 23 Class Members as independent contractors;

    b.    Whether the permanency of the relationship between the parties, the degree of skill required for the rendering of the services, the stylists' investment in equipment or materials for the task, the stylists' opportunity for profit or loss depending upon their skill, the degree of Defendants' right to control the manner in which the work was performed, and whether the services rendered were an integral part of the Defendants' business;

c.   Whether Defendants paid Tammy Kennedy and the Rule 23 Class members for all hours worked;

d.   Whether Defendants paid Tammy Kennedy and the Rule 23 Class members minimum wage for all hours worked and overtime wages for hours worked in excess of 40 per workweek;

e.   Whether Defendants took unlawful deductions from the wages of Tammy Kennedy and Rule 23 Class members;

f.   Whether Defendants failed to pay Tammy Kennedy and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

g.   Whether the wages due to Tammy Kennedy and the Rule 23 Class were in dispute at the time they were denied to them;

h.   Whether Plaintiff and the Rule 23 Class members conferred a benefit on Defendants;

i.   Whether Defendants were aware of the benefits conferred on them by Plaintiff and the Rule 23 Class members;

j.   Whether it would be unjust for Defendants to retain the benefits conferred on them by Plaintiff and the Rule 23 Class members;

k.   Whether Defendants receive a benefit by requiring Plaintiff and the Rule 23 Class members to pay for and use their supplies;

l.   Whether Defendants receive a benefit by paying Plaintiff and the Rule 23 Class members as independent contractors instead of employees;

m.   Whether Defendants receive a benefit from charging monthly "rent" to Plaintiff and the Rule 23 Class members;

n.   Whether Defendants receive a benefit by requiring Plaintiff and the Rule 23 Class members to work a minimum number of hours;

o.   Whether Defendants receive a benefit by requiring Plaintiff and the Rule 23 Class members to complete various operational, organizational, and managerial duties for which they are not paid a wage;

p.   How much it would cost Defendants to offer the same service while paying Plaintiff and the Rule 23 Class members as employees instead of independent contractors;

q.   The nature and extent of class-wide injury and the measure of damages for those injuries.

317.   In recognition of the services Tammy Kennedy has rendered and will continue to render to the Rule 23 Class, Tammy Kennedy will each request payment of a service award upon resolution of this action.

## CAUSES OF ACTION
### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

318. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

319. Tammy Kennedy and the FLSA Collective are employees entitled to receive no less than minimum wage for all hours worked.

320. Defendants failed to pay Tammy Kennedy and the FLSA Collective minimum wage for all hours worked.

321. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Tammy Kennedy and the FLSA Collective.

322. Tammy Kennedy and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

323. As a result of Defendants' violations, Tammy Kennedy and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Overtime Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

324. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

325. Tammy Kennedy and the FLSA Collective are employees entitled to receive no less than one-and-a-half times minimum wage for all hours worked in excess of forty (40) hours.

326. Defendants failed to pay Tammy Kennedy and the FLSA Collective than one-and-a-half times minimum wage for all hours worked in excess of forty (40) hours.

327. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Tammy Kennedy and the FLSA Collective.

328. Tammy Kennedy and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

329. As a result of Defendants' violations, Tammy Kennedy and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### Count 3
### Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a
### (On Behalf of Plaintiff and the Rule 23 Class)

330. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

331. Article II § 34a of the Ohio Constitution requires that employees be paid not less than minimum wage as determined by an inflation index for all hours worked.

332. By not paying Tammy Kennedy and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

333. As a result of Defendants' violations, Tammy Kennedy and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, an additional two times unpaid wages in damages under Section 34a, costs, and attorneys' fees.

**Count 4**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Class)**

334. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

335. During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Tammy Kennedy and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

336. O.R.C. § 4113.15(A) requires that Defendants pay Tammy Kennedy and the Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

337. Plaintiff and the Rule 23 Class's unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

338. In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

339. As a result of Defendants' willful violation, Tammy Kennedy and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 5**
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiff and the Rule 23 Class)**

340. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

341.     During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Tammy Kennedy and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

342.     Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

343.     Defendants did not pay Plaintiff and the Rule 23 Ohio Wage Class one and one half times their regular rate for hours worked in excess of forty hours in a workweek.

344.     By not paying Plaintiff and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the Ohio Minimum Fair Wage Standards Act, O.R.C. § 411.03.

**Count 6**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Class)**

345.     Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

346.     The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

347.     By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Tammy Kennedy and the Rule 23 Class have been injured as a result.

348.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

349.     As a result of Defendants' willful violations of the FLSA, Tammy Kennedy and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 7**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Class)**

350.     Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

351.     Tammy Kennedy and the Rule 23 Class have conferred a benefit upon Defendants, namely, their wages.

352.     Defendants retained the wages of Tammy Kennedy and the Rule 23 Class.

353.     Defendants knew that Tammy Kennedy and the Rule 23 Class conferred that benefit on Defendants.

354.     As described above, Defendants received benefits as a result of retaining wages and tips provided by customers to the Tammy Kennedy and the Rule 23 Class.

355.     The benefits include, but are not limited to, the employees' labor.

356.     Defendants did not compensate or under-compensate Tammy Kennedy and the Rule 23 Class for these benefits.

357.     Accordingly, Defendants' retention of these benefits under these circumstances would be unjust.

358.     As a result of Defendants having been unjustly enriched, Tammy Kennedy and the Rule 23 Class are entitled to compensation for the value of the benefit Tammy Kennedy and the Rule 23 Class conferred on Defendants.

**Count 8**
**Failure to Pay Minimum Wages – Florida Constitution, Art. X, §24**
**(On Behalf of Plaintiff Tammy Kennedy)**

359. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

360. Defendants that owned and operated the Clearwater, Florida Lady Jane's salon paid Tammy Kennedy below minimum wage for the hours she worked.

361. By not paying Tammy Kennedy at least minimum wage for each hour worked, these Defendants have violated Florida Constitution, Art. X, Section 24.

362. As a result of Defendants' violations, Tammy Kennedy is entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in damages under Section 24, costs, and attorneys' fees.

**Count 9**
**Unjust Enrichment under Florida law**
**(On Behalf of Plaintiff Tammy Kennedy)**

363. Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

364. Tammy Kennedy has conferred a benefit upon the Defendants that owned and operated the Clearwater, Florida Lady Jane's salon, namely, her wages.

365. These Defendants retained the wages of Tammy Kennedy.

366. These Defendants knew that Tammy Kennedy conferred that benefit on Defendants.

367. As described above, these Defendants received benefits as a result of retaining Tammy Kennedy.

368.    The benefits include, but are not limited to, Tammy Kennedy's unpaid labor in support of their business, and her contribution to their business expenses.

369.    Defendants did not compensate, or they under-compensated Tammy Kennedy.

370.    Accordingly, Defendants' retention of these benefits under these circumstances would be unjust.

371.    As a result of Defendants having been unjustly enriched, Tammy Kennedy is entitled to compensation for the value of the benefit Tammy Kennedy conferred on Defendants.

**Count 10**
**FLSA Retaliation**
**(On behalf of Plaintiff Tammy Kennedy)**

372.    Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

373.    Tammy Kennedy reported her concerns with Defendants interference with Tammy Kennedy's right to control the method, manner, and means of the performance of her stylist services at Lady Jane's Haircuts for Men, specifically how Defendants exerted control over her work essentially transforming Tammy Kennedy and Defendants relationship to that of an employer-employee relationship.

374.    Rather than amending their company wide-policies and practices to permit Tammy Kennedy and the Lady Jane's stylists to function as independent contractors, Defendants increased their supervision and control of Tammy Kennedy's work.

375.    Tammy Kennedy was engaging in protected activity by asserting her rights under the FLSA.

376.    In retaliation for Tammy Kennedy asserting her rights to work as an independent contractor or to be paid as an actual employee, Defendants reduced her work schedule.

377.    In retaliation for Tammy Kennedy asserting her rights to work as an independent contractor or to be paid as an actual employee, Defendants terminated her contract.

378.    Defendants' conduct was willful, wanton, reckless, and/or malicious.

379.    As a result of Defendants' retaliatory conduct, Tammy Kennedy is entitled to damages, including, but not limited to, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

**Count 11**
**Retaliation – Ohio Constitution Section 34a**
**(On behalf of Plaintiff Tammy Kennedy)**

380.    Plaintiff Tammy Kennedy restates and incorporates the foregoing allegations as if fully rewritten herein.

381.    As a result of the foregoing, the central management team and the Entity Defendants have discharged or discriminated against Tammy Kennedy in violation of Section 34a of the Ohio Constitution.

382.    Tammy Kennedy is entitled to legal or equitable relief as appropriate to effectuate the purposes of Section 34a, including without limitation, damages, employment, promotion, damages in an amount set by the Court sufficient to compensate Tammy Kennedy and deter future violations (but not less than one hundred and fifty dollars for each day that the violation continued), costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Tammy Kennedy prays for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.      Compensatory and punitive damages for Defendants retaliatory actions pursuant to the FLSA.

D.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.      Designation of Plaintiff Tammy Kennedy as representative of the Rule 23 Ohio Class and counsel of record as Class Counsel;

F.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a, the OMFWSA, and O.R.C. § 4113.15.

G.      An award of unpaid minimum wages and overtime wages due under Section 34a and the OMFWSA.

H.      An award of damages under Section 34a, based on Defendants' failure to pay minimum wages pursuant to Section 34a, calculated as an additional two times of back wages.

I.      Liquidated damages under O.R.C. § 4113.15.

J.      Compensatory and punitive damages under O.R.C. § 2307.60.

K.       A declaratory judgment that the practices complained of herein are unlawful

48

under the Florida Constitution, Art. X, Section 24.

L.     An award of unpaid minimum wages and unreimbursed expenses due under Florida Constitution, Art. X, Section 24.

M.     An award of damages under Florida Constitution, Art. X, Section 24, based on Defendants' failure to pay wages, calculated as an additional one time of back wages.

N.     An award of the value of the benefits for which Defendants were unjustly enriched.

O.     An award of damages for retaliatory discharge under the Ohio Constitution.

P.     An award of prejudgment and post-judgment interest.

Q.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

R.     Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Laura E. Farmwald*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Laura E. Farmwald (Ohio Bar No. 0095304)
Emily A. Hubbard (Ohio Bar No. 0096032)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

49

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Laura E. Farmwald*
Laura E. Farmwald