IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Tammy Kennedy,<br><br>*On behalf of herself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>Lady Jane's Haircuts for Men Holding Company, LLC, *et al.*;<br><br>Defendants. | Case No. 1:23-cv-00493<br><br>Judge Michael Barrett |

UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiff Tammy Kennedy and opt-in plaintiffs Elizabeth Bender, Brittany Boggan, Kim Burns, Amanda Brozovic, Amanda Cantwell, Joy Carbary, Melissa Cook, Kelsey Fitzgerald, Kayle Gatka, Jamie Gavin, Tiffany Hays, Leanna Hed, Maggie Iglesias, Chloe Kertesz, Jamie Lindquist, Heather Maag, Dana Malfara, Meagan McCready, Arlan Peak, Kolbi Perry, Mary Pyett, Genny Rice, Alicia Sanchez, Melissa Speaker, Marie Wawryzyniak, Madeline Wilke, Jhamya Winters, and Tiffany Wolf (collectively, "Plaintiffs") and Defendants Lady Jane's Haircuts for Men Holding Company, LLC, Lady Jane's Milford, OH, LLC, Lady Jane's Clearwater FL, LLC, Lady Jane's Moore OK, LLC; Lady Jane's Sunset Hills MO, LLC, Chad Johnson, Tim McCollum, Jesse Dhilon, and Alicia Bunch (collectively, "Defendants") ask that the Court grant approval of their Settlement Agreement, attached as Exhibit 1.

1

The proposed Settlement Agreement, attached hereto as Exhibit 1, resolves the claims against Defendants raised in this lawsuit. Defendants do not oppose this motion.

As explained further in the attached Memorandum of Law, Plaintiffs request that the Court grant approval of the proposed settlement and order the parties to carry the settlement according to its terms.

Respectfully submitted,

/s/Laura Farmwald
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Laura E. Farmwald (Ohio Bar No. 0093504)
Emily A. Hubbard (Ohio Bar No. 0096032)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiffs*

Memorandum In Support of Plaintiffs'
Motion For Settlement Approval

1. **Introduction**

Plaintiff Tammy Kennedy and the opt-in plaintiffs in this case have reached a settlement with Defendants that would resolve all claims raised in this lawsuit, as set forth in the Settlement Agreement. *See* Exhibit 1.[1]

The Parties seek the Court's approval of their wage and hour settlement because it is fair, adequate, and reasonable. Upon Defendants' final payment of the settlement funds, the Parties will ask that this Court dismiss the case in its entirety and with prejudice.

2. **Summary of Case and Settlement**

Plaintiff Tammy Kennedy filed a class and collective action complaint on behalf of herself and the similarly situated hairstylists who worked at Defendants' salons. Doc. 1, ¶¶139-220. The stylists allege that they were paid less than the minimum wage and that Defendants failed to pay them overtime. Defendants deny those allegations.

The stylists entered independent contractor agreements when they began working for Defendants. Doc. 21-1, PageID #286; Doc. 34-1, ¶9.[2] The stylists challenged the validity of these agreements due to the extensive amount of control that Defendants exhibited over their schedules,

---

[1] While the Parties have agreed to the terms of the Settlement Agreement, the Parties are still working on obtaining all of the individual signatures for the Agreement. The Parties are contemporaneously filing a copy of the settlement agreement with signatures obtained to date. The Parties will file a fully executed copy of the Settlement Agreement on or before December 09, 2025.

[2] See also, Doc. 34-2, ¶9; Doc, 34-3, ¶9; Doc. 34-4, ¶9; Doc. 34-5, ¶8; Doc. 34-6, ¶9; Doc. 34-7, ¶9.

3

daily duties, pay, and what they could charge clients. Doc. 1, ¶¶158-280. Plaintiffs alleged that Defendants' extensive control created an employer-employee relationship. *Id*. Defendants deny those allegations.

The independent contractor agreements also contained a commercial arbitration provision. *See* Agreement, Doc. 21-1, PageID # 286. In response to the Complaint, Defendants filed a Motion Dismiss or Stay the Complaint and to Compel Arbitration. Doc. 21. Plaintiffs challenged the validity of the arbitration agreement on several grounds. Doc. 34.

While the briefing on Defendants' Motion to Compel Arbitration was proceeding, a related case was filed in the Western District of Michigan by hairstylists who worked at Defendants' salons across the country. *See Gavin, et al. v. Lady Jane's Haircuts for Men Holding Company, LLC*, Case No. 2:23-cv-12602, Doc. 1 (E.D. of Mich. Oct. 16, 2023). The Parties in this action and the *Gavin* action were represented by the same counsel, and defendants filed a similar motion to compel arbitration in the *Gavin* action.

On May 16, 2024, the Eastern District of Michigan entered an order dismissing the stylists' complaint and compelling them to pursue their claims through individual arbitrations. *Gavin v. Lady Jane's Haircuts for Men Holding Co., LLC*, No. 2:23-cv-12602, 2024 U.S. Dist. LEXIS 88533, 2024 WL 2231667 (E.D. Mich. May 16, 2024). The *Gavin* plaintiffs appealed that decision to the Sixth Circuit Court of Appeals. *See Gavin v. Lady Jane's Haircuts for Men Holding Company, LLC, et al.,* Case No. 24-1509 (6th Cir.).

While that Sixth Circuit appeal was pending, this Court entered an Order granting Defendants' Motion to Compel Arbitration and staying this action until the arbitrations were resolved. Doc. 51.

4

Following the Sixth Circuit's decision affirming the *Gavin* decision, the Parties engaged in settlement discussions in an effort to resolve all the stylists' claims and avoid the additional expense of individual arbitrations. On October 28, 2025, the Parties filed a Joint Notice of Settlement advising that the Parties had reached a settlement in principle. Doc. 60. Pursuant to that settlement, Plaintiffs filed a Motion to Lift the Stay and now seek approval from the Court of the Settlement.

3. **Summary of Claims and Settlement**

Plaintiffs claim that they were improperly classified as independent contractors and are entitled to unpaid overtime wages. To prevail on their claims, Plaintiffs would have had to prove (1) that they were misclassified as independent contractors, which is a fact-intensive inquiry, and (2) that they worked hours for which they did not receive either minimum wage or time-and-a-half overtime wages. Defendants deny liability and claim that Plaintiffs are properly classified as independent contractors and have received all compensation owed.

Based on Defendants' time records, and assuming they are accurate, Plaintiffs have suffered only $10,901.70 in unpaid minimum wage and overtime wages. But, Plaintiffs allege that Defendants' time records did not account for all of their time worked each week. Therefore, to calculate potential damages, Plaintiffs estimated that Defendants' time records failed to account for 4 hours per week worked by the stylists. Based on those adjusted hours, Plaintiffs allege they are entitled to an additional $31,442.46 in unpaid minimum and overtime wages. In addition, Plaintiffs sought liquidated damages under the FLSA in the amount of 1× unpaid wages, additional statutory damages under the applicable state laws, and unjust enrichment damages.

In settlement of their claims, Plaintiffs will receive a total of $32,000.00 with that amount distributed amongst the stylists based on their percentage of total estimated damages, as calculated

above. The individual awards are identified in Exhibit 1 to the Settlement Agreement. In addition, Plaintiffs' attorneys' fees and costs will be paid separately, and in addition to, the $32,000 allocated to their damages.

4. **The Standard for Settlement Approval**

Some federal courts have held that, when a current or former employee alleges a violation of the FLSA, either the Secretary of Labor or a district court must scrutinize the settlement for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982); *see also Vigna v. Emery Federal Credit Union*, 2016 U.S. Dist. LEXIS 166605, 2016 WL 7034237, at *2 (S.D. Ohio 2016); *Gentrup v. Renovo Serv., LLC*, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at *2 (S.D. Ohio 2011).

This rule—that a district court must evaluate an FLSA settlement—has never been adopted by the Sixth Circuit. *Bazemore v. Papa John's USA, Inc.*, No. 3:22-cv-311, 2025 U.S. Dist. LEXIS 5133, at *4 (W.D. Ky. Jan. 10, 2025). And a growing number of courts have recently rejected *Lynn's Food Stores'* reasoning. *See, e.g., Gilstrap v. Sushinati LLC*, 734 F.Supp.3d 710, 715-18 (S.D. Ohio 2024); *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 256 n.10 (5th Cir. 2012); *Bazemore*, 2025 U.S. Dist. LEXIS 5133, at *4; *Walker v. Marathon Petroleum Corp.*, 684 F. Supp. 3d 408, 412 n.3 (W.D. Pa. 2023); *Barrios v. Kamps, Inc.*, 2024 U.S. Dist. LEXIS 164762, 2024 WL 4181210 (W.D. Mich. Sept. 12, 2024); *Cummins v. Midmark Corp.*, 2024 U.S. Dist. LEXIS 126752, 2024 WL 3405458 (S.D. Ohio July 9, 2024); *Rainford v. Freedom Fin. Network LLC,* 2024 U.S. Dist. LEXIS 103371, 2024 WL 2942715 (D. Ariz. June 11, 2024)*; Neikirk v. Ephraim McDowell Health, Inc.,* 2025 U.S.

Dist. LEXIS 90242, 2025 WL 1361737 at *3 (E.D. Ky. May 2, 2025); *Bond v. Carter Express, Inc.*, No. 3:24-cv-00013 -WHR-CHG, p.2, n.2 (S.D. Ohio Aug. 5, 2025).[3]

When courts approve FLSA settlements, their role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The court ensures that the settlement is the product of a bona fide dispute, is fair, reasonable, and adequate, and was reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard

### 4.1. The settlement is the product of a bona fide dispute.

The Parties did not simply "negotiat[e] around the FLSA's requirements concerning wages and overtime." *Call v. CTA Pizza, Inc.*, 2019 U.S. Dist. LEXIS 181325, 2019 WL 5307071 at *7 (S.D. Ohio Oct. 21, 2019). The parties' disputed the facts and the application of the law to the facts they did agree on. They are engaged in a bona fide dispute.

### 4.2. The settlement is fair, reasonable, and adequate.

The most important factor to consider when evaluating a proposed settlement is plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *6. In this case, Plaintiffs' success on the unpaid claim was not certain. First, Plaintiffs would have to overcome the burden of showing they were misclassified as independent contractors. Second, Plaintiffs would have to support their contention that they worked additional hours each week that were not captured by Defendants' records. Some of those arguments are purely legal in nature, while others

---

[3] A copy of the *Bond* decision is attached hereto as Exhibit 2.

could require expert testimony to a jury. As it is, the settlement provides Plaintiffs with all of their alleged unpaid wages, with fees and expenses paid separately.

Based on Plaintiffs' counsel's calculations, the stylists will receive 102% of their alleged unpaid wages, calculated using Defendants' records plus an additional 4 hours each week for each stylist. This is an excellent result and exceeds the results of comparable cases. *Compare*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, 2016 WL 5907869 *21 (N.D. Cal. Oct. 11, 2016) (settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth*, 2010 U.S. Dist. LEXIS 20446, *12 (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average.").

Given the complexity of the legal and factual questions that would have been presented by this case, the considerable time and expense required to litigate those questions on an individual basis through arbitration, and the uncertainty of success, the settlement is fair, adequate, and reasonable. Wage and hour cases are "inherently complex and time consuming." *Harding v. Steak N Shake, Inc.*, 2025 U.S. Dist. LEXIS 53458, 2025 WL 896322, at *4-5 (N.D. Ohio March 24, 2025). Continued litigation would have required an individual arbitration for each stylist, and further substantial discovery, expense, and likely expert testimony. This could have easily resulted in additional expense of almost $80,000 just for the individual arbitration filing fees alone.[4] The

---

[4] Defendants would have been responsible for an initial filing fee of $2,100 and a non-refundable case management fee of $750 for each arbitration filed. Employment_Group_Filing_FeeSchedule_sh.indd

settlement provides a benefit to each Plaintiff and avoids the time, expense, and uncertainty of moving forward with their claims through the arbitration process.

### 4.3. The settlement was reached through arms-length negotiations.

The Parties reached the above settlement following the Sixth Circuit's decision in the *Gavin* case, and in an effort to avoid the additional costs associated with filing 29 separate arbitrations. In the process of their negotiations, the Parties exchanged data related to the hours worked and rates of pay for Plaintiff and the Opt-In Plaintiffs. The Parties fully evaluated the potential costs and risks associated with moving forward with the 29 individual arbitrations.

Ultimately, the Parties decided to forego proceeding with 29 individual arbitrations and enter a settlement to resolve the stylists' claims. The settlement was reached after numerous discussions, exchanges of information, and additional negotiations. The Parties negotiated at arm's length over the course of several months to reach this resolution.

Defendants provided records of the hours worked by Plaintiffs. Plaintiffs asserted those records did not capture the total hours worked, which Defendants dispute. Plaintiffs' asserted damages and settlement negotiation positions were based on those records plus an additional 4 hours worked each week for each stylist. Counsel for the Parties engaged in several formal settlement communications and email communications to arrive at the final settlement amounts and terms. "Absent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada Invs., Inc v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

Through the Parties' efforts, they were able to reach the resolution now presented to the Court. This non-collusive, arms-length process allowed the Parties to achieve a fair settlement agreement.

### 4.4. The payment of attorneys' fees and costs is reasonable.

Under the terms of the settlement agreement, Plaintiffs' attorneys' fees will be paid separately from their individual awards. Counsel will receive $77,000 in attorneys' fees and costs to resolve Plaintiffs' claims.

This is a substantial discount on Plaintiffs' attorneys' fees and costs. Plaintiffs have incurred $167,730.30 in attorneys' fees and $3,625.00 in litigation costs in pursuit of their claims. As it stands under the settlements, after deducting the advanced litigation costs, Plaintiffs' counsel will receive 44% of their lodestar amount. Plaintiffs and their counsel are willing to accept this settlement to facilitate the resolution of Plaintiffs' claims. These attorneys' fees and costs are reasonable and should be approved.

### 4.5. The incentive awards are reasonable

The named plaintiffs whom the other stylists agreed to have represent their claims by joining this action and the *Gavin* action, each request a $2,000.00 incentive award. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). Incentive awards up to $10,000 are routinely granted in the Sixth Circuit. *Estate of McConnell*, 2021 U.S. Dist. LEXIS 92836, at *22 (approving a $10,000 service award in wage and hour case and citing other cases approving awards of the same amount).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a

prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, 2019 WL 6310376 at *21 (S.D. Ohio Nov. 25, 2019).

As with the fees, Plaintiffs ask that the Court approve the incentive awards.

### 4.6. Conclusion

Plaintiffs ask the Court to approve the Parties' Settlement Agreements and, upon Defendants' payment of the respective settlement funds, dismiss the lawsuit and each of its underlying claims in their entirety with prejudice.

Respectfully submitted,

*/s/Laura Farmwald*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Laura E. Farmwald (Ohio Bar No. 0093504)
Emily A. Hubbard (Ohio Bar No. 0096032)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiffs*

## Certificate of Conferral

Plaintiff's counsel Laura E. Farmwald certifies that she conferred with defense counsel on this motion, and Defendants do not oppose the motion.

<u>/s/Laura Farmwald</u><br>
Laura Farmwald

## Certificate of Service

Plaintiff certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's ECF system to all parties indicated on the filing receipt.

<u>/s/Laura Farmwald</u><br>
Laura Farmwald